O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONI MARGO JAMES, | Case No. ED CV 14-1094 JCG |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

Joni Margo James ("Plaintiff") challenges the Social Security Commissioner's decision denying her application for disability benefits. Three issues are presented for decision here:

1. Whether the Administrative Law Judge ("ALJ") properly considered the relevant medical evidence of record, (*see* Joint Stip. at 6-10);

2. Whether the ALJ properly evaluated Plaintiff's credibility, (*see id.* at 14-18); and

3. Whether the ALJ properly determined that Plaintiff is able to perform alternative work as a housekeeping cleaner, (*see id.* at 19-21).

The Court addresses, and rejects, Plaintiff's contentions below.

/ / /

A.   The ALJ Properly Considered the Relevant Medical Evidence

First, Plaintiff contends that the ALJ improperly considered the relevant medical evidence. Primarily, Plaintiff contends that the ALJ erred by failing to discuss certain medical evidence pertaining to Plaintiff's residual functional capacity ("RFC"), including: (1) an x-ray of Plaintiff's lumbar spine, (2) an MRI of Plaintiff's lumbar spine, (3) a medical progress note regarding Plaintiff's prescription for a walker, and (4) Plaintiff's global assessment of functioning ("GAF") score of 45. (See id. at 6-8; AR at 457, 688, 741, 744.) Additionally, Plaintiff asserts that the ALJ improperly rejected the controverted opinion of Plaintiff's treating psychiatrist, N. Patel, M.D., that Plaintiff is unable to complete a 40-hour workweek without decompensating. (See Joint Stip. at 8-10; AR at 467.)

Generally, in making an RFC determination, an ALJ must consider all the relevant evidence in the record, including medical records, lay evidence, and the effects of symptoms, including pain reasonably attributable to medically determinable impairments. See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006). However, the ALJ "need not discuss all evidence presented." Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). Rather, the ALJ must explain only why "significant probative evidence has been rejected." Id. at 1395 (citation omitted).

Here, the ALJ did not err in considering the medical evidence for four reasons.

First, the ALJ expressly discussed the lumbar spine x-ray and MRI results. (Compl.[1] at 15; AR at 741, 744.) That is, the ALJ considered those imaging results in conjunction with the other medical evidence of record to conclude that Plaintiff has degenerative disc disease of the lumbar spine and an RFC for a range of light work. (Compl. at 15; AR at 743-44.) And, although Plaintiff may disagree with the ALJ's

---

[1]   The Court refers to the copy of the ALJ's decision that is attached to the Complaint, as the Administrative Record omits pages 8 and 11. (See AR at 503-16.)

ultimate characterization of the medical record, the role of this Court is not to reweigh evidence. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Second, the record supports the ALJ's conclusion that a walker was not a medical necessity. (*See* Compl. at 15.) Plaintiff faults the ALJ for failing to discuss a nurse's progress note indicating that Plaintiff "was ordered a walker by physician per chrono." (AR at 688.) However, the record actually reflects that there were "[n]o orders for [a] walker." (*Id.* at 717.) Instead, a Department of Corrections nurse issued Plaintiff a walker only as a "reasonable accommodation," until Plaintiff could be seen by a physician. (*Id.* at 708.) Moreover, in March 2013, a consultative examiner observed that while Plaintiff "ambulated very slowly with the use of a walker" during the examination itself, she was able "to ambulate at a normal pace and with significantly increased agility" once she reached the parking lot immediately thereafter. (Compl. at 15; AR at 659.) Based on this evidence, the ALJ reasonably concluded that Plaintiff did not require a walker. *See Batson v. Comm'r. of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record[.]").

Third, the ALJ's failure to accurately discuss Plaintiff's GAF score was harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006) (ALJ's error is harmless where inconsequential to the ultimate non-disability determination). That is, although the ALJ inaccurately referred to Plaintiff's GAF scores as ranging from 50 to 68, Plaintiff's actual GAF score of 45 was in the same functional range as her score of 50.[2] (*See* Compl. at 19); *see also Howard v. Comm'r*

---

[2] A GAF score between 41 and 50 indicates serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, or frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, friendlessness or inability to maintain employment). *See* Am. Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), at 34 (4th ed. 2000).

*of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (ALJ's "failure to reference the GAF score in the RFC, standing alone, [did] not make the RFC inaccurate"). Additionally, the ALJ expressly found that Plaintiff's GAF scores had "little evidentiary value," because they were "subjectively assessed scores reveal[ing] only snapshots of impaired and improved behavior." (Compl. at 19.) Indeed, Plaintiff's GAF score of 45 was assigned during Plaintiff's January 2011 initial intake assessment, which referenced no related functional limitations. (AR at 457.) Thus, since the ALJ adequately assessed Plaintiff's overall mental health by giving more weight to the objective mental health evidence of record, the ALJ's failure to discuss Plaintiff's GAF score of 45 does not render the RFC analysis unreliable. (Compl. at 13, 19; AR at 129-30, 145-46, 371, 660); *see also Howard*, 276 F.3d at 241.

Fourth, regarding Dr. Patel's disability opinion, the ALJ properly found that the psychiatrist's "checklist-style" assessment was insufficiently supported by adequate rationale. (Compl. at 18-19; AR at 467); *see also Batson*, 359 F.3d at 1195 (ALJ did not err in giving "minimal evidentiary weight" to controverted medical opinions that were "in the form of a check-list" and lacked supportive objective medical findings). Notably, Dr. Patel provided no explanation to substantiate his assertions that Plaintiff has disabling mental functional limitations. (AR at 467.) Moreover, his treatment notes lack substantive medical findings to support his opinion that Plaintiff would not be able to complete a 40-hour workweek without decompensating. (*Id.* at 422, 451-53, 467.) And, while Dr. Patel's records from January through April 2011 document Plaintiff's complaints of delusions and hallucinations, the ALJ reasonably inferred that Plaintiff's failure to seek mental health treatment for these conditions after 2011 indicated that her symptoms were under control. (Compl. at 13, 18-19; AR at 371, 424, 707, 719, 733-35); *see also Flaten v. Sec'y of Health and Human Services*, 44 F.3d 1453, 1464 (9th Cir. 1995) (ALJ was entitled to infer lack of disability from general lack of medical care).

In sum, substantial evidence supports the conclusion that the ALJ properly

considered the relevant medical evidence.

### B. The ALJ Properly Rejected Plaintiff's Credibility

Second, Plaintiff asserts that the ALJ improperly rejected her credibility. (Joint Stip. at 14-18.)

As a rule, an ALJ can reject a claimant's subjective complaints by expressing clear and convincing reasons for doing so. *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). Under this standard, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). However, this "clear and convincing" standard does not apply where there is affirmative evidence of malingering. *See Carmickle v. Comm'r, Social Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).

Here, the ALJ identified affirmative evidence of malingering. (Compl. at 13; AR at 660.) Specifically, in a March 2013 psychological evaluation, an examining psychologist diagnosed Plaintiff with malingering, after finding that her performance on several tests reflected "her effort to simulate cognitive impairment." (AR at 660.)

Thus, substantial evidence supports the ALJ's adverse credibility determination. *See Carmickle*, 533 F.3d at 1160.

### C. The ALJ Properly Determined that Plaintiff is Capable of Working as a Housekeeping Cleaner

Third, Plaintiff contends that the ALJ improperly concluded that she is capable of performing the duties of a housekeeping cleaner, as described by the Dictionary of Occupational Titles ("DOT") No. 323.687-014. (*See* Joint Stip. at 19-21.) Namely, Plaintiff argues that this job – which involves hanging and cleaning draperies; washing walls, ceilings, and windows; and replacing light bulbs – conflicts with her RFC's preclusion of ladder-climbing. (*See id.* at 20, Ex. 1 at 1.) Plaintiff further agues that "it is simply impossible" that she perform the activities required of a housekeeping cleaner, as she is limited to only occasional stooping or bending. (*See*

1 | *id.* at 20-21.)

2 | The Court, however, is unpersuaded.

3 | Generally, a DOT job description raises a presumption as to how a given job is performed. *See Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). When an ALJ cites a job, and the DOT description conflicts with a claimant's work limitations, "the ALJ must definitively explain [the] deviation," and "the record must contain persuasive evidence to support [it]." *Pinto v. Massanari*, 249 F.3d 840, 846-47 (9th Cir. 2001) (citation omitted).

9 | Here, for three reasons, no such conflict exists between the DOT description and the ALJ's determination.

11 | First, the DOT provides that the housekeeping cleaner job requires no climbing and only occasional stooping, kneeling, and crouching. *See* DOT No. 323.687-014. As the ALJ's RFC determination is consistent with these requirements, there was no apparent conflict for the ALJ to reconcile. (*See* Compl. at 11-12.)

15 | Second, the housekeeping cleaner position does not require performance of *all* of the workplace tasks outlined in the DOT's description. *See* DOT No. 323.687-014. Rather, the DOT merely requires the performance of "any combination" of those tasks. *Id.*; *see also Johnson*, 60 F.3d at 1435 (the DOT "is not comprehensive, but provides only occupational information on jobs as they have been found to occur, [which] may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities") (citation omitted).

22 | Third, even if Plaintiff was required to perform all of the workplace tasks listed in the DOT description, Plaintiff offers no convincing proof that such tasks would actually involve climbing ladders or engaging in more than occasional bending or stooping. *See* DOT No. 323.687-014.

26 | Accordingly, the Court does finds no error with the ALJ's determination that Plaintiff is capable of working as a housekeeping cleaner.

28 | Based on the foregoing, **IT IS ORDERED THAT** judgment shall be entered

**AFFIRMING** the decision of the Commissioner denying benefits.

DATED: 3-5-2015

_____
Hon. Jay C. Gandhi
United States Magistrate Judge

\*\*\*

**This Memorandum Opinion and Order is not intended for publication. Nor is it intended to be included or submitted to any online service such as Westlaw or Lexis.**

\*\*\*